## BABBITT *vs.* BABBITT.

Where a father and his family are all beneficiaries of a trust fund intended for their common support, and the father grossly fails to discharge his duty in dispensing the income for the purposes for which it was given, though made by the instrument creating the trust the sole judge of the necessities of his family, this court will assume the distribution of the income, so as to secure to the beneficiaries a just and equitable participation therein.

Bill for relief. On final hearing, on pleadings and proofs.

*Mr. J. L. Blake,* for complainant.

*Mr. R. Gilchrist,* for defendant Babbitt, trustee.

THE CHANCELLOR.

The bill in this cause is filed by Frank M. Babbitt, one of the children of William M. Babbitt, in behalf of himself and his mother, and brothers and sisters, *cestuis que trust,* under the will of Daniel Babbitt, deceased, late of Orange, in the county of Essex, against his father and Albert P. Condit, trustees under the will above mentioned. The complainant's mother and brothers and sisters are, with the trustees, parties defendant to the suit. The bill alleges that Daniel Babbitt, who was the father of the defendant, William M. Babbitt, died in the year 1864; that by his last will and testament, which is dated April 25th, 1862, he gave and devised to his son, William M. Babbitt, and Albert P. Condit, and to the survivor of them, and his heirs, the house and tract of land in Orange, then recently purchased by the testator of his said son, to have and to hold the same in trust to and for the following uses, that is to say : to the use of William M. Babbitt and Albert P. Condit, and the survivor of them, and his heirs, during the lifetime of William ; and after his decease, to the use of his lawful children, as tenants in common, and their respective heirs and assigns, forever ; the lawful issue of any deceased child being entitled to the share of his or her parent. And the freehold so devised to the trustees and the survivor of them, and his heirs, for and during the life of William, was thereby declared to be upon the special trust following, to wit, that they and the survivor of them should, during the said lifetime of William, take and receive the rents, issues and profits of the said real estate, and therewith make all necessary repairs, and pay all taxes and other requisite charges

and expenses in and about the same, and after deducting all such payments, should appropriate and expend the balance thereof under the direction and control of William, in and for the support and maintenance of himself and family, including the education of his children, in such manner and to such extent as to him should seem proper. And the testator did thereby further authorize and empower the trustees and the survivor of them, in their or his discretion, to sell and convey, in fee simple, or otherwise, the whole or any part of the real estate so devised, and the proceeds of any sale or sales so made, to reinvest in bonds and mortgages or other sufficient security, the purchaser or purchasers of such real estate not being accountable or responsible, in any way, for the application of such proceeds; the yearly income thence arising to be appropriated and expended, during the said lifetime of William, in the same manner and for the same purposes as the rents and profits of the real estate while unsold; and after his decease, the whole principal, with any surplus of interest or income that may be on hand, to be divided equally among his lawful children, the lawful issue of any deceased child taking his or her parent's share.

The bill alleges that the complainant is of full age, and that he and his mother, as a member of his father's family, and his brothers and sisters, all of whom, at the filing of the bill, were minors, either as members of the family, or as lawful children of William M. Babbitt, have each of them a present, as well as a prospective interest in the trust estate; that the defendants, William M. Babbitt and Albert P. Condit, took upon themselves the discharge of the duties of the trusteeship under the will; that in September, 1865, William M. Babbitt was indebted to the Orange National Bank in the sum of about $50,000, which, on the 1st of January, 1868, had increased to over $70,000, and at the latter date, his entire indebtedness was nearly or quite $85,000. The bill further alleges, that in order to raise money to pay part of his indebtedness, he fraudulently

induced his co-trustee, on or about the 22d day of September, 1865, to unite with him in the sale and conveyance of the trust property, which then consisted of the house and lot in the will mentioned, to William M. Babbitt's brother-in-law, William H. Vermilye, for the price of $35,000, and that Mr. Condit was induced by Mr. Babbitt to accept, in payment of the purchase money of that conveyance, a mortgage for $35,000, on a farm of about three hundred acres, owned by the latter, and situated in the town of Newton, in the county of Sussex ; that Vermilye, when that conveyance was made, gave to Mr. Babbitt a secret writing, in the nature of a declaration of trust, by which he declared that that sale and conveyance were made for the benefit of Mr. Babbitt, and for the purpose of raising money on the property, and agreed to convey the property to him on request. The bill states that Vermilye mortgaged the property for about $12,000, and then conveyed a part of the premises to Mr. Babbitt, who conveyed it to Mary E. Gill for a consideration which he received, and that from the mortgage and sale last mentioned, Mr. Babbitt realized $17,000. The residue of the property was conveyed to the bank, on account of Mr. Babbitt's indebtedness to them. The bill sets forth proceedings taken in this court by Mr. Condit, to set aside the conveyance to Vermilye and the conveyance to the bank, on the ground of the fraud practiced on him, whereby he was induced to join in the conveyance to Vermilye. Those proceedings resulted in a decree requiring the reconveyance, and an account from Mr. Babbitt of the moneys received by him from the mortgage put on the property by Vermilye, and from the conveyance to Mary E. Gill. The bill alleges that Babbitt conveyed to Condit, as security for the $17,000 above mentioned, certain timber land in Pennsylvania, called the "Equinunk Property;" that subsequently, the premises mentioned in the will were sold by the trustees for $70,000, and the trustees invested $35,000 of the money in the purchase of the mortgage which had been given to them on the farm in Sussex, but which, by the

decree above mentioned, they had been required to transfer to the bank; that afterwards the trustees bought the equity of redemption of the farm from William W. Shippen, who had become the owner of it by purchase at sheriff's sale under execution issued on a judgment in his favor against Mr. Babbitt; that Babbitt conducted the negotiation and managed to effect the exchange of the equity of redemption for the Equinunk property; that in that transaction he contrived to obtain, as part of the consideration of the conveyance of the Equinunk property, a release of a debt of about $13,000, due to Shippen from him, and to get over $1500 in cash, which he applied to his own purposes, and that he has never accounted for that sum, nor for the consideration of the release of the debt due Shippen from him; and that, except so much of the value of the Equinunk property as went to purchase the equity of redemption from Shippen, Babbitt has paid nothing upon the debt of $17,000. The bill states that the trust estate consists of the farm and a small unascertained balance (it appears to be about $3000, without allowing for expenses, commissions, &c., of executing the trust), in the hands of Mr. Condit. The farm is subject to a mortgage of $3300, and interest, held by a Mr. Townsend, on part of it; and there are also two other mortgages, the principal of which amounts to about $2500, on the farm, with other land. The bill further states that the farm has been, ever since it was purchased by the trustees, in the possession of Mr. Babbitt; that it is of the value of about $50,000 over all encumbrances; that it is taking damage from his neglect and mismanagement; that he has resided on it for the last twelve years, and at the filing of the bill, still resided there with part of his family; that he has suffered the buildings to become dilapidated for want of repairs, has neglected to pay the taxes on the property and to keep the buildings properly insured against loss or damage by fire, and not only has not kept down the interest on the Townsend mortgage, but has fraudulently sought to procure the sale of the land thereby mortgaged for a larger sum

than was in fact due, in order to advantage himself thereby. The bill alleges that Mr. Babbitt does not apply a due proportion of the income from the property to its legitimate purposes—the support and maintenance of his family and the education of his children; that because of his conduct in the premises, there has arisen a disagreement between him and his co-trustee in regard to the management of the trust estate, and that Mr. Babbitt has sought and is now seeking to procure the removal of his co-trustee, to the end that he may himself get full and complete control of the estate for his own purposes; that Mr. Condit's conduct in the premises has been fair, just and generous, and that he has been the protector of the trust estate. The bill prays an account from Mr. Babbitt of the trust estate received by him, or which he might or ought to have received, and that he may be decreed to be removed from his trusteeship, and some other suitable person appointed by this court in his stead, to act in conjunction with Mr. Condit, and with him to hold and manage the trust estate; and that Mr. Babbitt may be decreed to transfer and pay over unto Mr. Condit and such new trustee, or to Mr. Condit as sole trustee, whatever property of the trust estate may be in his hands, or which, on his accounting, may appear to be due from him to the trust estate; and that such certain part of the net rents, issues, profits and income of the trust estate as shall seem to this court to be just, shall be appropriated and expended under the direction of Mr. Condit, as acting trustee (or under the direction of Mr. Condit and such new trustee), in and for the support, maintenance and education of the wife and children of Mr. Babbitt; and that Mr. Babbitt may be perpetually enjoined and restrained from any and all further interference with the trust property.

Mr. Babbitt has answered the bill. He denies the fraud charged against him, and claims that he has done his duty not only to the trust estate, but to his family; denies the charges of neglect and mismanagement contained in the bill; alleges that the proceedings to remove him are instigated by

his co-trustee, who is his brother-in-law, and at enmity with him, and that his operations have been crippled and his income from the trust property diminished, by the refusal of his co-trustee to join him in reasonable measures for the development of that property. The decision of this case has been delayed, in the hope that some arrangement of this family matter might be made among the parties. No reasonable expectation of such a result any longer exists. It therefore becomes the duty of the court to pass upon the case presented for its judgment. That the conduct of Mr. Babbitt in the management of the trust estate has not been fair and just, cannot be doubted. The records of this court show a decree against him obtained by his co-trustee, and founded on fraudulent practice, by which he obtained a conveyance of the entire trust property to his brother-in-law on a secret agreement between him and the latter, that the conveyance was to be largely for his benefit. It appears that he was then continued in the trust, only at his earnest solicitation. The sequel showed that, had the conveyance to Vermilye been permitted to stand, and had Mr. Babbitt been permitted to have the benefit of the arrangement made with Vermilye, the trust estate would have been the loser to the extent of $52,000, of which, by means of the arrangement, Mr. Babbitt would have had the exclusive benefit. As it was, he obtained $17,000 of the trust property, for which the estate received from him the Equinunk property. Mr. Condit testifies that Mr. Babbitt admitted to him that in the exchange of that property with Mr. Shippen for the equity of redemption in the farm, he had received $2000 in cash. He has never paid over, nor accounted for that money to the trust estate. Subsequently, and in the year 1872, he procured, as appears from his own evidence in the suit now pending in this court, brought by him to remove his co-trustee, the institution of proceedings for the foreclosure of the Townsend mortgage above mentioned. That mortgage was upon forty acres of the farm. There seems to have been no good reason why a part of it might not have been sold to raise the amount due

on that mortgage, which was reported by the master to be $4707.91, but was, in fact, only $3500. One of the witnesses testified that Mr. Babbitt valued that property at more than $10,000, and that Mr. Babbitt had valued it as high as $20,000. Mr. Babbitt appeared before the master, and testified that it was necessary and advisable to sell all of the forty acres to raise the amount due on the mortgage. He gave no reason for his opinion, however. It appears that, through the neglect of the holder of the mortgage to endorse all the payments of interest on the bond, the final decree in that suit was entered for about $1200 more than was really due. Mr. Babbitt became apprised of this fact. He did not seek to correct it, however, but sought to avail himself of that means to obtain money for his own use out of the trust property. Not only so, but he appears to have designed to get title to the mortgaged premises with a like view, by means of sale under the foreclosure. The law firm of Coult, Van Blarcom and Cochrane were the solicitors of Mr. Townsend in the foreclosure suit. Mr. Coult, of that firm, testifies as follows on the subject: "The master reported the sum of $4707.91 then due upon said mortgage, and a decree was entered for that amount, and an execution was issued on that decree, directed to the sheriff of the county of Sussex. Shortly after, Mr. Babbitt called on me at my office, and stated that the decree had been taken for a greater amount than was really due to the complainant; that about $1100 of interest had been paid, not endorsed on the bond; he said he proposed to see Mr. Townsend and make an arrangement with him to allow the property to be sold for the amount stated in the decree, and return to him afterwards the amount paid on the bond and not endorsed. He said he was very much in need of money. Mr. Condit would not consent to join with him in a conveyance of any part of the property, or to mortgage the same, and that, in this way, he would be able to raise some money. He also said that the property was worth a good deal more than the mortgage; he said he valued it about $500 an acre; but if sold under the foreclosure, it could,

probably, be bought for the amount due on the mortgage; and that he proposed to get some friend to buy it for him, and then he could raise a considerable sum of money, either by sale or by a mortgage on the property. I made no reply to him, but I wrote to Albert P. Condit, stating that Mr. Babbitt had said that a decree had been taken for a greater amount than was due upon the mortgage; and also stated to him the substance of the proposition Mr. Babbitt had made to me. Soon afterwards, we received a letter from Mr. Townsend, authorizing us to endorse on the execution the amount that had been paid and not endorsed on the bond. Mr. Condit paid the costs and the interest due on the mortgage, and, by the consent of Mr. Townsend, execution was stayed."

Mr. Van Blarcom also testifies on this point. He says: "After the execution was placed in the sheriff's hands, Col. Babbitt produced to me certain receipts for payments made to Mr. Townsend upon the bond and mortgage, and which were not endorsed on the bond, which payments amounted, in the aggregate, to $1155. He stated to me, that he intended to see Mr. Townsend, and make an arrangement with him by which the excess over the amount really due on said bond and mortgage should be paid by him, (Townsend,) to him, (Babbitt). As I now recollect, he, at the same time, said that he was very much pressed for money, and desired me to write to Mr. Townsend, and state to him, (Townsend,) that the property was amply sufficient to pay the amount for which the decree had been taken, and that he, (Townsend,) would be perfectly safe in paying to him, (Babbitt,) the amount of said excess. I told Col. Babbitt, that I thought it would be unfair and improper to enter into any such arrangement, and the amount which had been paid was, by consent of Mr. Townsend, endorsed on said execution. Col. Babbitt said to me, that in his opinion, the property would not bring, at sheriff's sale, any more than the amount of the decree and costs, and that he proposed to have some friend bid upon it, and buy it in for him; stating, at the same time, that the property was worth much more than the amount of the de-

cree. I have an indistinct recollection that he also stated, in substance, that he could make an arrangement with some person to procure a loan on said premises sufficient to pay the Townsend decree; and my impression is, that I saw a printed blank in his hands, containing a description of the premises and an appraisement of its value. I do not remember the precise valuation put upon the premises, but it was largely in excess of the decree."

Mr. Coult testifies that the mortgaged premises front on what is called Ridge road, which runs from Newton past Col. Babbitt's residence; that property along that road is more valuable if divided into small lots, and he supposed that the mortgaged premises could have been so divided, and would have brought more if sold in that way. The premises appear to have had a frontage on that road of from seven hundred to eight hundred feet. No explanation of this transaction is attempted. It is, of itself, a most cogent reason for depriving the defendant of any further participation in the management of the trust estate.

The testimony presents other reasons of equal weight. Robert T. Johnson, Jr., a member of the law firm of Anderson and Johnson, of Newton, testifies to a conversation which took place, he says, between him and the defendant, about six weeks before the time when the witness gave his testimony. He says, that in that conversation the defendant told him that he had commenced proceedings against his co-trustee for the purpose of procuring the removal of the latter, and that there was no doubt but that his co-trustee would be removed, and that he, himself, would then have full control of the trust estate; that he would receive from his co-trustee, $18,000, and the interest thereon for about seven years; and that as soon as he received the money, he would repay to the witness the money which he was then desirous of borrowing of him, and for which he then applied; and that out of the money he should so receive from his co-trustee, he intended to pay off and discharge all his debts. There is other testimony in the cause of the like character.

The defendant's insolvency is proved. The evidence of his incompetency, arising from long continued illness, to take part in the management of the trust estate, is of so conclusive a character, as, of itself, to induce the court to relieve him of his office of trustee.

It remains to consider the propriety of directing a division of the income among the *cestuis que trust.* From whatever cause, whether improvidence, or mismanagement, or, as charged in the bill, disregard of duty, it is very clear, from the testimony, that the family have not received proper support from the income of the estate. Mr. Babbitt has manifestly been untrue to his trust in this respect, also. The farm is worth, according to the testimony of witnesses competent to speak on the subject, from $35,000 to $50,000. It is capable of a high degree of cultivation, and, according to the evidence just referred to, may be made to yield a net annual income of $3000. Ordinarily prudent management would have secured to the defendant and his family a comfortable support, at least, from the productions of this large and valuable farm, and have spared the latter the privations of which they justly complain. However reluctant the court may be to interfere with the prerogative of a father of a family to judge as to the necessities of his children, it will, in such a case as this, where the father and the family are all beneficiaries of a trust fund intended for their common support, and where the father grossly fails to discharge his duty in dispensing the income for the purposes for which it was given, itself assume the distribution of the income, so as to secure to the beneficiaries a just and equitable participation therein. *Oliver* v. *Oliver*, 2 *Green's Ch.* 368; *Jacobus' Executor* v. *Jacobus*, 5 *C. E. Green* 49; *Hamley* v. *Gilbert*, 1 *Jac.* 354; *Foley* v. *Parry*, 5 *Sim.* 138; *Hadow* v. *Hadow*, 9 *Sim.* 438; *Jubber* v. *Jubber, Ib.* 503; *Wardle* v. *Claxton, Ib.* 524; *Wetherell* v. *Wilson,* 1 *Keen* 80; *Longmore* v. *Elcum*, 2 *Y. & C.* 363; *Raikes* v. *Ward*, 1 *Hare* 445; *Jodrell* v. *Jodrell*, 14 *Beav.* 413; *Castle* v. *Castle*, 1 *DeG. & J.* 352.

The will in this case directs that the trustees, after paying for necessary repairs and taxes and other requisite charges and expenses of the trust property, shall appropriate and expend the balance of the income, under the direction and control of the defendant, in and for the support and maintenance of himself and his family, including the education of his children, in such manner and to such extent as to him shall seem proper. In case of sale of the trust property mentioned, the proceeds were to be invested and held on the like trust. The trustees are to make the expenditure and appropriation, but the direction and control thereof are given to the defendant. The purposes of the expenditure, however, are defined; the support and maintenance of Mr. Babbitt and his family, including the education of the children, the extent and manner of such education being left to his judgment and discretion. The domestic history disclosed by the evidence, leads irresistibly to the conclusion, that the defendant has so failed to observe his obligations under the trust, that it is the duty of the court to provide for the distribution of the income of the trust estate. Unless, therefore, the parties shall, by an amicable arrangement of this matter, (which I earnestly recommend,) render it unnecessary to make such distribution, it will be referred to a master to ascertain and report what part of the income should be paid to the defendant and his wife and his children, respectively, for their support and maintenance, and for the education of the minor children. There will be a reference to report a proper person to be trustee in the place of the defendant, who will be removed.